UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CITY OF NEW HAVEN, | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:10-CV-02047 (JCH) |
| | : | |
| v. | : | |
| | : | MARCH 8, 2012 |
| INSURANCE COMPANY OF THE | : | |
| STATE OF PENNSYLVANIA | : | |
| Defendant. | : | |
| | : | |

**RULING RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 27)**

In this insurance coverage dispute the plaintiff, the City of New Haven ("New Haven"), seeks (1) a declaratory judgment that an excess liability policy issued by the defendant, Insurance Company of the State of Pennsylvania ("ISOP"), covers certain claims asserted against New Haven and that certain exclusions ISOP relied upon to deny coverage are void and unenforceable; and (2) reformation of its insurance contract with ISOP to delete the exclusions ISOP relied upon to deny coverage. ISOP now moves, pursuant to Federal Rule of Civil Procedure 56, for summary judgment on New Haven's claims (Doc. No. 27). For the reasons stated herein, ISOP's Motion (Doc. No. 27) is **granted**.

1

**I.     BACKGROUND**[1]

    A.     <u>The Accident and the Underlying Lawsuits</u>

This insurance coverage dispute arises out of an automobile accident between two New Haven police officers on September 9, 2008 ("the accident"). That evening, police officers Dario Aponte and Diane Gonzalez were on duty and responded in police vehicles to the same emergency call. L.R. 56(a)(1) Stmt. ¶ 3. While on route to the emergency, the two vehicles collided in an intersection. Id. ¶ 4. Officer Aponte died as a result of the collision, and Officer Gonzalez suffered extensive injuries. Id. ¶ 5; L.R. 56(a)(1) Stmt. Ex. 2 (the "Gonzalez Compl."), ¶ 7.

The Estate of Officer Aponte (the "Aponte Estate") and Officer Gonzalez, through her two conservators, have both commenced litigation against each other and against New Haven in Connecticut state court. L.R. 56(a)(1) Stmt. ¶ 6. In each action, the plaintiff officer alleges that the defendant officer's negligence caused the accident. Id. ¶ 7. In each action, the plaintiff officer also named New Haven as a defendant. Id. ¶¶ 6, 9.

Gonzalez and New Haven settled the Aponte Estate's claims in its state court action, as well as the Aponte Estate's workers' compensation claims against New Haven, pursuant to a settlement agreement executed on May 11, 2011, and a stipulation approved by a compensation commissioner on April 25, 2011. L.R. 56(a)(2) Stmt. Ex. 3 (the "Roche Aff."), Ex. A (the "Settlement Agreements") at 7, 13. Gonzalez'

---

[1] Unless otherwise cited, the following facts are based upon the uncontested portions of the parties' Local Rule 56(a) Statements, or are disputed facts asserted by New Haven and as to which evidence has been placed in the record.

claims against the Aponte Estate and New Haven remain pending. Gonzalez v. Aponte, No. NNH-CV10-6014415-S (Conn. Super. filed Sept. 9, 2010) (trial scheduled for February 2013).[2]

### B. New Haven's Insurance Coverage

ISOP issued a "Special Excess Liability Policy for Public Entities" to New Haven with coverage effective August 12, 2008, through September 30, 2009 (the "Policy"). L.R. 56(a)(2) Stmt. ¶ 12; see generally L.R. 56(a)(2) Stmt. Ex. 5 (the "Haller Aff."), Ex. A (the "Policy"). The accident therefore occurred within the policy period. L.R. 56(a)(2) Stmt. ¶¶ 3, 12.

The Policy provides, "We shall pay you, or on your behalf, the ultimate net loss, in excess of the retained limit, that the insured becomes legally obligated to pay by reason of liability imposed by law or assumed under an insured contract because of bodily injury or property damage arising out of an occurrence during the Policy Period." Policy at 10.[3] The retained limit is $1 million. Id. at 1.

The Policy defines "you" and "your" to mean "the Named Insured(s) shown in the Declarations and any other person(s) or organization(s) qualifying as an insured under this Policy." Id. at 10. The named insureds are New Haven and the City of New Haven Board of Education. Id. at 1. The Policy includes as an "insured," "[a]ny of your

---

[2] This court takes judicial notice of the docket entries in the underlying state court actions. See Anderson v. Rochester-Genesee Regional Transp. Authy., 337 F.3d 201, 205 n.4 (2d Cir. 2003).

[3] The page numbered "1" of the Policy appears on page 10 of Exhibit A to the Haller Affidavit. This ruling cites to the relevant page of Exhibit A as though Exhibit A as a whole were consecutively numbered.

employees, servants, or volunteers while acting within the course and scope of their employment or duties as volunteers." Id. at 21.

The Policy includes a fellow employee exclusion, however, which provides that ISOP "will not defend or pay under this Policy for claims or suits against you . . . [a]rising out of the liability of your employees for bodily injury to another of your employee(s) injured in the course of his or her employment." Id. at 22. The Policy also includes a workers' compensation exclusion, which provides that ISOP "will not defend or pay under this Policy for claims or suits against you . . . [f]or which you, or any carrier as your insurer, may be held liable under any workers' or unemployment compensation law, disability benefits law or any similar law." Id.

C.   This Insurance Coverage Lawsuit

A notice of claim was filed purportedly on behalf of the Aponte Estate and Gonzalez. Haller Aff. Ex. B, at 1. In a letter dated July 30, 2010, ISOP's claims administrator, Chartis Claims, Inc. ("Chartis"), advised New Haven that ISOP had received this notice of claim, but it had determined that the Policy did not cover New Haven's liability arising out of the accident. Id. at 1-3. The letter further stated ISOP's conclusion that the fellow employee exclusion and the workers' compensation exclusion both operated to exclude coverage for liability arising out of the accident. Id. at 2. After subsequently receiving the Gonzalez Complaint, Chartis, in a letter dated August 30, 2010, reiterated ISOP's coverage determination stated in the July 30 letter. Haller Aff. Ex. C, at 1.

On November 30, 2010, New Haven filed this action against an improper party, Chartis Specialty Insurance Company ("Chartis Insurance"). Doc. No. 12 at 1-3. With

4

leave to do so, New Haven filed an Amended Complaint against both Chartis Insurance and ISOP. See Am. Compl. ¶¶ 1-40.[4]  New Haven subsequently dismissed its claims against Chartis Insurance voluntarily.  Doc. No. 20.

In its Amended Complaint, New Haven claims that the two exclusions which ISOP relied upon to deny coverage (1) violate public policy because they violate Conn. Gen. Stat. Ann. § 31-293a; (2) breach ISOP's contract with New Haven; and, (3) are the product of mutual mistake.  Am. Compl. ¶¶ 34-40.  Based on these claims, New Haven seeks (1) a declaratory judgment that the fellow employee exclusion and workers' compensation exclusion are void and unenforceable and that coverage exists for New Haven's liability arising out of the accident, and (2) reformation of the Policy to delete the fellow employee exclusion and workers' compensation exclusion.  Am. Prayer for Relief ¶¶ 1-2.

## II.  STANDARDS OF REVIEW

### A.  Summary judgment

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  No genuine issue of material fact exists, and summary judgment is therefore appropriate, when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."

---

[4] New Haven's Amended Complaint separately numbers the allegations of the claims against Chartis Insurance and the claims against ISOP.  This court refers to the allegations of the Amended Complaint as if they were consecutively numbered.

5

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A material fact is one which "might affect the outcome of the suit under the governing law," and an issue is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). But "[c]onclusory allegations will not suffice to create a genuine issue." Delaware & Hudson Railway Co. v. Consolidated Rail Corp., 902 F.2d 174, 178 (2d Cir.1990).

B.  Insurance Contracts

In Connecticut,[5] "the proper construction of a policy of insurance presents a question of law" that is proper for the court to determine on a motion for summary judgment. See QSP, Inc. v. Aetna Cas. and Sur. Co., 256 Conn. 343, 352 (2001). A court must determine "the intent of the parties as expressed by the language of the policy . . . [including] what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy." Id. at 351 (internal quotations omitted); see also R.T. Vanderbilt Co., v. Continental Cas. Co., 273 Conn. 448, 462 (2005). The court examines the policy "in its entirety." QSP, Inc., 256 Conn. at 351. "If the terms of the policy are clear and unambiguous, then the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning." R.T. Vanderbilt Co., 273 Conn. at 462. In contrast, if the terms of the insurance policy are ambiguous, the court must construe "any ambiguity in the terms . . . in favor of the insured." QSP, Inc., 256 Conn. at 352. A policy term is

---

[5] Neither party challenges Connecticut law as the source of substantive law in this matter.

ambiguous if, "without violence," the term is "susceptible to two [equally reasonable] interpretations. . . ." R.T. Vanderbilt Co., 273 Conn. at 462.

## III. DISCUSSION

ISOP argues that the Policy's fellow employee exclusion validly bars coverage for New Haven's liability arising out of the accident. This court agrees.[6] This court further concludes that no factual basis exists for New Haven's claim for reformation of the Policy so as to delete the fellow employee exclusion. Accordingly, with no material issues of fact in dispute, summary judgment for ISOP is proper.

### A. The Underlying Claimants' Status as "insured[s]"

As a threshold matter, New Haven argues that this court should understand this declaratory judgment action as asserting both New Haven's claimed right to coverage under the Policy and claims for coverage under the Policy which New Haven asserts on behalf of the Aponte Estate and Gonzalez, claiming that they are "insured[s]" under the Policy. Mem. in Opp'n to Def. Mot. for Summ. J. at 4-9; see Policy at 21. This court concludes that New Haven has not established a sufficient legal or factual basis for asserting claims for coverage on behalf of the Aponte Estate and Gonzalez. Accordingly, New Haven cannot assert those claims on this record and cannot rely on the claimed status of the Aponte Estate and Gonzalez as insureds under the Policy to defeat summary judgment.

---

[6] Because this court concludes that no genuine issue of material fact exists as to whether ISOP properly denied coverage based on the fellow employee exclusion, this Ruling does not address ISOP's other arguments in support of its Motion for Summary Judgment.

7

New Haven does not identify any legal basis for its claimed right to assert that the Policy covers the Aponte Estate and Gonzalez on their behalf in this action when neither is a party here.[7]  Although the Aponte Estate and Gonzalez, based on their plausible claims to "insured" status, would have standing to state a claim for coverage under the Policy, Wilcox v. Webster Ins., Inc., 294 Conn. 206, 216-17 (2009), New Haven points to no comparable legal authority authorizing it to assert such claims on their behalf.  Without identifying a plausible legal basis for asserting claims for coverage on behalf of the Aponte Estate and Gonzalez in an action to which neither is a party, New Haven may not make those claims for coverage here, and the merits of their potential claims cannot preclude summary judgment in ISOP's favor.[8]

Even if this court liberally construes New Haven's summary judgment submissions to argue that it may pursue claims against ISOP on behalf of the Aponte

---

[7] Although New Haven moved to join the Aponte Estate to this action and the Aponte Estate simultaneously moved to intervene, the court (Dorsey, J.) denied both Motions.  City of New Haven v. Ins. Co. of the State of Pa., No. 3:10-cv-2047 (JCH), Doc. No. 62 (D. Conn. Dec. 13, 2011) (consolidated ruling on pending motions).

[8] Neither party has apprised this court that the Aponte Estate nor Gonzalez has made a claim for coverage under the Policy in the underlying state court actions or in any other judicial proceeding. Accordingly, it appears that no court has reached the merits of any claim for coverage under the Policy which the Aponte Estate or Gonzalez might assert, and this court expresses no view on the merits of any such claim.

Estate and Gonzalez because it is the real party in interest by virtue of the combined effect of subrogation or assignment of rights[9] against the Aponte Estate and Gonzalez and New Haven's obligation to indemnify[10] the Aponte Estate and Gonzalez pursuant to Conn. Gen. Stat. Ann. § 7-465, the argument fails. New Haven has not pled that it acquired any contractual right of subrogation or that it received any assignment of rights from the Aponte Estate or Gonzalez,[11] see Am. Compl. ¶¶ 21-40, nor does the evidence in the record tend to demonstrate a contractual subrogation right or an assignment of rights which might defeat summary judgment, see Settlement Agreements at 1-17. Similarly, New Haven did not plead that the equities in these circumstances give rise to a right of equitable subrogation from the Aponte Estate or Gonzalez, see Am. Compl.

---

[9] It is not clear that New Haven, as a primary self-insurer, could acquire a subrogation right from the Aponte Estate or Gonzalez at all. The well-established anti-subrogation rule prevents an insurer from acquiring a subrogation right against its own insured. Allstate Ins. Co. v. Palumbo, 296 Conn. 253, 274-75 (2010). Courts have split on the question whether the anti-subrogation rule applies to self-insured entities. Compare Farmers Ins. Exch. v. Enterprise Leasing Co., 281 Va. 612, 620, 708 S.E.2d 852 (2011) (holding that anti-subrogation rule does not apply to self-insured entities) with ELRAC, Inc. v. Ward, 96 N.Y.2d 58, 77-78, 748 N.E.2d 1 (2001) (holding that anti-subrogation principles apply to both self-insurers and insurance companies). The Connecticut Supreme Court has yet to address this issue.
    Because this court concludes that, even construing New Haven's submissions to assert a right of subrogation, New Haven has not pleaded or produced evidence of a sufficient factual basis for any subrogation right, this court need not reach the issue whether New Haven could acquire such a right at all.

[10] The parties dispute whether Conn. Gen. Stat. Ann. § 7-465 actually requires that New Haven indemnify the Aponte Estate or Gonzalez for any liability to their respective fellow employee resulting from the accident. Although the Connecticut Supreme Court has suggested in obiter dictum that Conn. Gen. Stat. Ann. § 7-465 does require indemnification in these circumstances, see Keane v. Fischetti, 300 Conn. 395, 404-405 (2011), it has never squarely held so with respect to the current version of Conn. Gen. Stat. Ann. § 7-465. Because this court concludes that New Haven may not, on this record, assert claims for coverage on behalf of the Aponte Estate and Gonzalez, this court need not resolve the question.

[11] "Conventional subrogation can take effect only by agreement and has been said to be synonymous with assignment." Wasko v. Manella, 269 Conn. 527, 532 (2004) (quoting Westchester Fire Ins. Co. v. Allstate Ins. Co., 236 Conn. 362, 370-71 (1996)).

¶¶ 21-40,[12] nor did it present any evidence tending to suggest that such an equitable right exists here sufficient to defeat summary judgment.  Absent any factual basis in the pleadings or the summary judgment record which could support New Haven's claimed right to step into the shoes of the Aponte Estate or Gonzalez to litigate their status as insureds under the Policy, New Haven may not rely on such status to defeat summary judgment.

Because New Haven has not articulated a plausible legal basis for asserting the Aponte Estate's and Gonzalez' coverage claims on their behalf, and because New Haven neither pleaded nor presented evidence which could support its claimed right to litigate the Policy's coverage for the Aponte Estate and Gonzalez on their behalf, New Haven cannot raise those claims on this record.  Accordingly, if the Policy covers New Haven's liability arising out of the accident at all, it does so solely based on New Haven's own claims for coverage under the Policy.

B.     Fellow Employee Exclusion

The Policy excludes coverage "for claims or suits against [New Haven][13] arising out of the liability of [New Haven's] employees for bodily injury to another of [New Haven's] employee(s) injured in the course of his or her employment."  Policy at 22.  It

---

[12] In Connecticut, "[t]here is no general rule to determine whether a right of [equitable] subrogation exists.  Thus, ordering subrogation depends on the equities and attending facts and circumstances of each case. . . .  The determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court."  Allstate Ins. Co. v. Palumbo, 296 Conn. 253, 260 (2010) (internal citations and quotations omitted).

[13] The Policy uses the term "you," defined as "the Named Insured(s) shown in the Declarations and any other person(s) or organization(s) qualifying as an insured under this Policy."  Policy at 10.  The only relevant "Named Insured" here is New Haven.  Because this Court has already concluded that New Haven may not, on this record, assert claims for coverage on behalf of the Aponte Estate and Gonzalez, their potential status as "insured[s]" is irrelevant.  Accordingly, New Haven is the only relevant entity in this case to which the Policy refers in using the terms "you" and "your."

is undisputed that both Aponte and Gonzalez were employees of New Haven at the time of the accident and were injured in the course of their employment. Accordingly, the exclusion applies to New Haven's liability arising out of this accident. New Haven appears to concede as much,[14] but argues that ISOP cannot enforce the exclusion because it violates Conn. Gen. Stat. Ann. § 31-293a and is therefore void as against public policy. Pl.'s Supp. Br. in Opp'n re Def. Mot. for Summ. J. at 7. This court concludes that the exclusion is valid and, accordingly, that the Policy does not cover New Haven's liability arising out of the accident.

Section 31-293a of the Connecticut General Statutes codifies the exclusivity of the workers' compensation remedy for an employee's on-the-job injuries except in particular circumstances. The statute expressly reserves the employee's right to bring an action against a fellow employee "based on the fellow employee's negligence in the operation of a motor vehicle." Conn. Gen. Stat. Ann. § 31-293a; accord Conn. Gen. Stat. Ann. § 7-465 (reserving the right of municipal employees to do the same). Section 31-293a further prohibits primary automobile insurance policies submitted to the Commissioner of Motor Vehicles as proof of financial responsibility pursuant to Conn. Gen. Stat. Ann. § 14-112(a) from excluding "any agent, representative[,] or employee" of the owner of the automobile from coverage. Conn. Gen. Stat. Ann. § 31-293a;

---

[14] To the extent that New Haven argues that this court should interpret the exclusion not to deny coverage because New Haven reasonably expected that the Policy would cover its liability arising out of the accident, see Pl.'s Supp. Br. in Opp'n re Def. Mot. for Summ. J. at 7, this court rejects the argument. The exclusion is clear and unambiguous. See Policy at 22 ("We will not defend or pay under the Policy for claims or suits against [New Haven] . . . [a]rising out of the liability of [New Haven's] employees for bodily injury to another of [New Haven's] employee(s) injured in the course of his or her employment."). New Haven could not have reasonably expected that the Policy, despite this exclusion, would nonetheless cover its liability resulting from a claim or suit which arose out of an accident between automobiles driven by two of its employees acting in the course of their employment.

11

Palmieri v. Winnick, 10 Conn. App. 18, 21-22 (1987) (interpreting an earlier version of Conn. Gen. Stat. Ann. § 31-293a).

By its terms, the statute only applies to insurance policies "accepted as proof of financial responsibility of the owner and as evidence of the insuring of such person," that is, primary automobile insurance policies. Conn. Gen. Stat. Ann. § 31-293a. The statute therefore does not apply to other types of insurance, such as comprehensive general liability policies, Palmieri, 10 Conn. App. at 21-22, or excess or umbrella policies, Universal Underwriters Ins. Co. v. Paradis, 285 Conn. 342, 345-47 (2008). Such insurance policies may therefore exclude fellow employee motor vehicle negligence claims without violating Section 31-293a. See Paradis, 285 Conn. at 345-47; Palmieri, 10 Conn. App. at 21-22; see also Universal Underwriters Ins. Co. v. Paradis, 50 Conn. Supp. 486, 496-501 (Super. 2006), aff'd 285 Conn. 342 (2008).

Here, it is undisputed that the Policy is a "Special Excess Liability Policy for Public Entities." Policy at 10 (emphasis added). It is also undisputed that the Policy provides for a $1 million retained limit which must be exhausted before the Policy will cover a loss, id. at 10, 17, and that this $1 million retained limit exceeds the minimum coverage required by Conn. Gen. Stat. Ann. § 14-112(a). Section 31-293a therefore does not apply to the Policy, and the Policy may permissibly exclude motor vehicle negligence claims against a fellow employee from coverage.[15] See Paradis, 285 Conn.

---

[15] To the extent that New Haven argues that the co-employee exclusion violates public policy because "[ISOP] cannot . . . argue that the [P]olicy would not respond had Officer Aponte been a civilian. Therefore, [ISOP] should not benefit from a situation where Officer Aponte was a police officer," Mem. in Opp'n to Def. Mot. for Summ. J. at 20-21, this court rejects the argument. The Policy's unambiguous fellow employee exclusion reflects that New Haven and ISOP bargained for just such an outcome, and New Haven's self-insurance up to $1 million more than satisfies the public policy interest in maintaining insurance coverage for employees with potential personal liability in these circumstances.

at 345-47.  Accordingly, the fellow employee exclusion is valid, and the Policy excludes New Haven's liability arising out of the accident from coverage.

C. Reformation

New Haven argues that, if the Policy excludes coverage here, then the Policy was the product of mutual mistake because ISOP issued the Policy assuming that New Haven was immune from liability arising out of the accident.  Mem. in Opp'n to Def. Mot. for Summ. J. at 36-37, 39.  On this basis, New Haven seeks reformation of the Policy to delete the fellow employee exclusion upon which ISOP relied to deny coverage.[16]  See id.

"Reformation is not granted for the purpose of alleviating a hard or oppressive bargain, but rather to restate the intended terms of an agreement when the writing that memorializes that agreement is at variance with the intent of both parties.  Equity evolved the doctrine because an action at law afforded no relief against an instrument secured by fraud or as a result of mutual mistake."  Lopinto v. Haines, 185 Conn. 527, 532 (1981); see also Harlach v. Metropolitan Prop. and Liab. Ins. Co., 221 Conn. 185, 191 (1992) (holding that "application of the equitable principle of reformation [is] not proper" without "claim []or proof of a mutual mistake, fraud or inequitable conduct on the part of either party").

"The burden of proof on the issue of reformation is upon the party seeking it." Lopinto, 185 Conn. at 535.  In order to satisfy this burden, the party seeking reformation

---

[16] New Haven also seeks reformation to delete the workers' compensation exclusion, which ISOP also advances as an independent reason the Policy does not cover New Haven's liability arising out of the accident.  Because this court has already held that the fellow employee exclusion, standing alone, validly excludes New Haven's liability arising out of the accident from coverage, this court need only address New Haven's reformation claim with respect to the fellow employee exclusion.

13

must show its entitlement to the remedy by "clear, substantial, and convincing evidence." Id. at 534-35. Specifically, "[w]here fraud is absent, it must be established that both parties agreed to something different from what is expressed in writing, and the proof on this point should be clear so as to leave no room for doubt." Id. at 535 (internal citations and quotations omitted).

Viewing the evidence in the light most favorable to New Haven for purposes of deciding this motion, this court concludes that ISOP issued the Policy under the mistaken belief that New Haven was immune from liability arising out of the accident.[17] Pl.'s L.R. 56(a)(2) Stmt., Add'l Stmt. of Facts ¶ 3. Even if ISOP incorrectly assumed that New Haven could not be liable based on claims arising out of the accident, New Haven has not pointed to any legal authority which prohibits ISOP, or any other insurer, from including a policy term which excludes, from coverage, liability from which its insured is immune. Nor has New Haven articulated how this mistaken belief by ISOP-- in New Haven's immunity for claims of this type--prevented a meeting of the minds on the fellow employee exclusion such that reforming the Policy by deleting the exclusion is a proper remedy. If anything, the presence of the assumed-to-be-redundant fellow employee exclusion reinforces, rather than undermines, the conclusion that the parties unambiguously agreed that the Policy would not cover New Haven's liability arising out

---

[17] New Haven argues that this court should assume as much for purposes of this Motion because of ISOP's purported discovery violations. Mem. in Opp'n to Def. Mot. for Summ. J. at 39. This court makes this factual conclusion for purposes of this motion based on the summary judgment standard to "constru[e] all evidence in the light most favorable to the non-moving party," Pabon v. Wright, 459 F.3d 241, 247 (2d Cir. 2006), not based on any showing of a discovery violation. Judge Dorsey previously denied New Haven's Motion to Compel, without prejudice, for failure to demonstrate that the parties had made a good faith effort to resolve the discovery dispute. City of New Haven v. Ins. Co. of the State of Pa., No. 3:10-cv-2047 (JCH), Doc. No. 63 (D. Conn. Dec. 13, 2011). New Haven did not renew the motion and has made no showing that ISOP did not comply with its discovery obligations.

of the accident.  Even taking all of New Haven's evidence on this point as true, New Haven has not "established that both parties agreed to something different from what is expressed in writing."  <u>Lopinto</u>, 185 Conn. at 535.  No legal or factual basis therefore exists to reform the Policy by deleting the fellow employee exclusion.

Accordingly, New Haven's claim for reformation based on ISOP's mistaken belief that New Haven was immune from liability arising out of the accident fails as a matter of law.  No material factual dispute therefore remains for trial, and summary judgment for ISOP on this claim is appropriate.

### IV.    CONCLUSION

For these reasons, ISOP's Motion (Doc. No. 27) is **granted**.  The Clerk is directed to close this case.

**SO ORDERED.**

Dated at Bridgeport, Connecticut, this 8th day of March, 2012.


/s/ Janet C. Hall
Janet C. Hall
United States District Judge